IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LESLIE DEAN HOSFIELD, | ) | Case No. 5:23-CV-00147 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Plaintiff, Leslie Dean Hosfield, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Hosfield challenges the Administrative Law Judge's ("ALJ'") negative findings, contending that the ALJ erred in the evaluation of his subjective symptom complaints and in determining that he was capable of performing work at a medium exertional level.  Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Hosfield's application for DIB must be affirmed.

**I.      Procedural History**

On September 30, 2020, Hosfield applied for DIB.  (Tr. 294-295).  Hosfield alleged that he became disabled on March 15, 2015, due to (i) lumbago; (ii) sciatica; (iii) problems focusing, paying attention, and remembering; and (iv) depression.  (Tr. 304, 307).  The last date Hosfield could have qualified for Social Security disability insurance was December 31, 2016.  The Social

Security Administration denied Hosfield's application initially and upon reconsideration.

(Tr. 213-216, 218-222).  Hosfield requested an administrative hearing.  (Tr. 237-238).

On December 15, 2021, ALJ Reuben Sheperd held a telephonic hearing and denied

Hosfield's claim in a February 3, 2022 decision.  (Tr. 16-27, 31-66).  In doing so, the ALJ found

that Hosfield could perform work at the medium exertional level, except that:

> [Hosfield] may frequently balance, stoop, kneel, crouch, crawl, may occasionally
> climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the
> claimant must avoid all exposure to unprotected heights, hazardous machinery and
> commercial driving; the claimant is limited to the performance of simple, routine
> tasks and to the making of no more than simple work-related decisions, conducted
> in a work setting that i[s] routine, in that it contemplates few changes.

(Tr. 21).

The Appeals Council declined further review, rendering the ALJ's decision the final

decision of the Commissioner.  (Tr. 1-4).  Hosfield filed a complaint for judicial review.  ECF

Doc. 1.[1]

## II.    Evidence

The period under adjudication was March 15, 2015, the alleged disability onset date,

through December 31, 2016, Hosfield's date last insured.

### A.    Personal, Educational, and Vocational Evidence

Hosfield completed his GED in 1980 and had previously worked in building and grounds

maintenance and as a machine operator, a mechanic, and at various temporary jobs.  (Tr. 308).

### B.    Relevant Medical Evidence

As an initial matter, it bears mention that because of the limited evidence provided

reflecting Hosfield's condition or medical care before his date last insured, the ALJ considered

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my
jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 8.

evidence generated after December 31, 2016; the ALJ appears to have excluded medical evidence regarding an ankle injury unrelated to Hosfield's disability application.  Because the ALJ considered such additional evidence, it is included it in the medical evidence summary.

On November 23, 2016, Hosfield underwent an intake evaluation at Portage Path Behavioral Health.  (Tr. 563).[2]  Hosfield reported that he had been gaining control of his temper and he was hoping to address the ways childhood abuse affected him and to improve his relationship with his fiancé.  *Id.*  He reported experiencing anger and forgetfulness, and that his father and step-father had been abusive.  *Id.*  He believed this abuse affected his relationships, indicating he had a severe reaction when touched in certain ways, and had a prior history of domestic violence when girlfriends would "come at [him] physically" and he would "just lose it."  (Tr. 564-565).  Hosfield noted various physical conditions, including a bad back and disc injury, and reported experiencing pain with his daily activities.  (Tr. 566).  Hosfield underwent a mental status examination, which indicated that he appeared well groomed; had average activity; average eye contact; clear speech; an appropriate affect; a euthymic mood; good insight and judgment; and logical, though tangential, thoughts.  (Tr. 567).  It was also noted that he did not report any cognitive impairments and was cooperative and fully oriented.  *Id.*  Hosfield was diagnosed with an unspecified anxiety disorder and PTSD, and he was referred for individual therapy.  (Tr. 568-569).

On December 16, 2016, Hosfield returned to Portage Path Behavioral Health.  (Tr. 570). Hosfield's mental status examination results were largely the same as at his intake.  *Id.* Following counseling, it was noted that Hosfield was receptive, reported no significant changes

---

[2] The administrative transcript appears in ECF Doc. 6.

to his eating, sleeping, mood or behavior; and, on being instructed to make a list of his known triggers, was understanding and agreeable.  (Tr. 570-571).

On January 6, 2017, Hosfield was seen by Rachel Lester, CNP, after throwing his back out.  (Tr. 362).  Hosfield reported having previously seen a doctor for his back, who indicated the last disc in his back was bone on bone and he needed a fusion.  (Tr. 363).  He reported that the pain came and went, and described it as in his lower back, radiating down his legs, with regular numbness in his legs and the occasional sensation that his legs were covered with fire ants.  *Id.* He indicated that his legs would start tingling if he sat too long, his girlfriend would help him up in the morning, and going to the chiropractor and 800 mg Ibuprofen helped his pain, while the 600 mg dosage helped only a little.  *Id.*  Hosfield's physical examination results were generally unremarkable, but it was noted that he had decreased range of motion in the forward flexion of his back, and he had pain with palpation in his lower lumbar region.  (Tr. 363).  Nurse Lester assessed Hosfield with back pain, instructed him to get x-rays of his spine, and referred him to a chiropractor.  (Tr. 362-363).

On February 6, 2017, Hosfield saw Nurse Lester regarding his sciatica.  (Tr. 365). Hosfield reported feeling "a little better" and that he had done a lot of bedrest and tried to limit "things."  *Id.*  He admitted to feeling a cramp in his lower back and noted his pain would act up with lifting.  *Id.*  He continued to also get numbness and burning in his legs, especially when he would lie flat.  *Id.*  Nurse Lester's observations on examination were the same as made at the initial appointment.  *Id.*  She assessed Hosfield with sciatica and advised him to continue taking Ibuprofen, see a chiropractor and be x-rayed.  *Id.*

On February 7 and March 7, 2017, Hosfield was seen at Portage Path Behavioral Health. (Tr. 573, 575).  He underwent mental health exams, which were largely the same as at his prior

appointments. *Id.* At his February 7 appointment, following counseling, Hosfield was noted as receptive; Hosfield reported continued stress with his girlfriend but that he was able to set boundaries with her. (Tr. 573). In his March 7 appointment, Hosfield reported doing better overall, working, and maintaining boundaries with his girlfriend. (Tr. 575-576).

On April 5, 2017, Hosfield had x-rays of his lumbar spine taken. (Tr. 390). The impression was that he had multilevel endplate degenerative change throughout the lower thoracic/upper lumbar spine. *Id.* It was noted that he had no acute osseous abnormality. *Id.* Hosfield also had x-rays of his sacrum taken, which were unremarkable. (Tr. 391).

On April 6, 2017, Hosfield saw Nurse Lester. (Tr. 367-368). He reported that his back pain and tingling were worse, and he had yet to see a chiropractor. (Tr. 368). Nurse Lester's observations on physical examination were the same as at their prior appointments, but she noted he had 4/5 strength in his lower extremities, and minimal swelling and pain on palpation in his right wrist. *Id.* On a review of his imaging, Nurse Lester assessed Hosfield with multilevel degenerative disc disease, as well as acute wrist pain. (Tr. 367).

On April 11, 2017, Hosfield was seen by Safal N. Patel, M.D., for stitches in a finger on his left hand to be removed. (Tr. 369). Dr. Patel's observations on physical examination were unremarkable. *Id.*

On April 25, 2017, Hosfield returned to Portage Path Behavioral Health. (Tr. 577). His mental status examination results were largely the same as at his prior appointments. *Id.* Following counseling, Hosfield reported that he was doing well, noting an incident in which he believed he'd had second-hand exposure to drugs and was experiencing family tension regarding an inheritance. (Tr. 577-578).

On May 4, 2017, Hosfield was seen by Manish Kasliwal, M.D., for a neurological evaluation.  (Tr. 359).  Hosfield reported that he was injured about 10 years prior, and his symptoms had progressively worsened.  *Id.*  He reported the following pain percentages: (i) back pain at 70%, (ii) right leg pain at 15%, and (iii) left leg pain at 15%.  *Id.*  His prior treatment included activity modification, bedrest, heat/ice, nonsteroidal anti-inflammatory drugs, non-opioid analgesics, opioid analgesics, physical therapy, and chiropractic manipulation.  *Id.*  Hosfield reported that his pain was "markedly worse" with walking and lifting, and was relieved with activity modification.  *Id.*  A review of his systems was consistent with his complaints.  *Id.*  On physical examination, Dr. Kasliwal noted that Hosfield's gait and range of motion in his lumbar spine were normal, and he was otherwise unremarkable.  (Tr. 360).  Dr. Kasliwal recommended Hosfield stop smoking and asked that he be sent Hosfield's latest imaging.  *Id.*

On May 5, 2017, Hosfield saw Nurse Lester.  (Tr. 371).  Hosfield reported that his pain was better with Gabapentin, but it persisted.  *Id.*  Nurse Lester advised him to continue his medication and scheduled him for an MRI.  *Id.*

On June 6, 2017, Hosfield was seen at Portage Path Behavioral Health.  (Tr. 579).  His mental status examination results were largely the same as from his prior appointment.  *Id.*  Hosfield reported no significant changes in his mood, behavior, sleep, or eating, but indicated he was "frustrated" in relation to finances and work, rating his frustration as 5/10.  *Id.*  He also expressed frustration with not having control over his life, his girlfriend, and her family's needs that he attended to.  (Tr. 579-580).  Hosfield reported he had considered leaving his relationship; he was receptive to the idea of "working on" himself.  (Tr. 580).

On June 21, 2017, Hosfield saw Daniel Chapa, M.D., regarding his lumbago with sciatica.  (Tr. 373).  Hosfield reporting chronic back pain.  *Id.*  He also had recently fallen and

6

injured his rib, but the pain was tolerable with Ibuprofen.  *Id.*  He noted that his chronic back pain had been an issue for the past 12 years, interfering with his day-to-day activities; and, sometimes, his legs would give out.  *Id.*  He also noted having radicular symptoms.  *Id.*  A physical examination was, generally, unremarkable, except for a notation that the range of motion in his lumbar spine was limited by his pain.  (Tr. 374).  Dr. Chapa refilled or adjusted Hosfield's medications and noted his MRI was still pending.  (Tr. 373).

On June 29, 2017, Hosfield was seen at Portage Path Behavioral Health.  (Tr. 581). During his counseling, Hosfield explored his schema and self-talk that mediated his fear response and challenged his biases, replacing his distorted messages with "reality-based alternatives" and positive self-talk.  (Tr. 583).

On August 4, 2017, Hosfield saw Nurse Lester, regarding his lumbago and sciatica. (Tr. 377).  Hosfield reported that the Gabapentin and Ibuprofen helped with his pain, but he was frustrated with the process of trying to get an MRI.  *Id.*  Nurse Lester instructed him to continue taking his Gabapentin and Ibuprofen, and they discussed trying to get Hosfield an appointment with another neurologist in Akron.  *Id.*

On August 8 and September 13, 2017, Hosfield was seen at Portage Path Behavioral Health.  (Tr. 585, 588).  The results of his mental status examination were largely the same as at his prior appointments.  *Id.*  Following counseling, Hosfield reported no significant changes in eating, sleeping, mood or behavior.  (Tr. 586, 589).  During his August appointment, Hosfield reported being happy about the resolution of legal issues, difficulty trying to get appropriate care for his back pain (which he rated as 5/10) and struggling with his insurance.  (Tr. 586).  During his September appointment, he expressed continued frustrations with his back and leg pain and

7

with trying to get work.  (Tr. 589).  He also expressed concern over his girlfriend and his son; he was receptive to the therapist's interventions.  *Id.*

On October 12, 2017, Hosfield saw Dr. Patel, regarding his multilevel degenerative disc disease, among other unrelated conditions.  (Tr. 379).  He reported back pain that disrupted his sleep; Dr. Patel referred him to neurosurgery and re-referred him for an MRI.  (Tr. 380).  Dr. Patel prescribed Hosfield Vicodin, changed his Gabapentin dosage, and stopped his Ibuprofen.  (Tr. 379).

On October 30, 2017, Hosfield saw Katherine Guran, M.D.  (Tr. 498-501).  Hosfield reported 10 years of back pain, attributing it to a car accident, and noted that it had worsened during the preceding few months.  (Tr. 498).  He rated the pain as 4/10 and described it as sharp, achy in his lower back, and radiating bilaterally down his legs to his calves.  *Id.*  He also noted bilateral wrist pain.  *Id.*  Hosfield reported numbness and tingling in his legs to his calf, and indicated his pain was worse with standing, sitting, and sports, but was better when lying down.  *Id.*  He had tried physical therapy, chiropractic care, and at home exercises.  *Id.*  A review of Hosfield's systems and physical examination results were, generally, unremarkable.  (Tr. 499-500).  However, it was noted that, although there was no obvious deformity in his back, there was bony tenderness along the lumbar vertebrae, mild bilateral paraspinal muscle tenderness, pain with extension, and limited side bending and rotation due to his back pain.  *Id.*  Dr. Guran's impression was that he had multilevel endplate degenerative changes through the lower thoracic/upper lumbar spine.  (Tr. 498).  She assessed Hosfield with chronic bilateral low back pain with bilateral sciatica, and they discussed various treatment options.  (Tr. 500).

On November 6, 2017, Hosfield underwent an MRI of his lumbar spine.  (Tr. 505).  The impression was that he had disc bulging at all lumbar levels except one, resulting in at most slight or minimal degrees of spinal stenosis.  (Tr. 507-508).

On January 4, 2018, Hosfield was seen at Portage Path Behavioral Health.  (Tr. 593).  His mental status examination results were, generally, the same.  *Id.*  He reported that he was not doing well because of the loss of his truck and inability to find stable housing.  (Tr. 594).  He also reported frustration of his family situation and his child's mother's involvement in his life. *Id.*  He was receptive to therapy, however. *Id.*

On February 2, 2018, Hosfield saw Monisha Kumar, M.D., regarding, in part, his legs going numb and changes in his medication.  (Tr. 381).  Hosfield reported recently having an MRI, which noted disc bulging at multiple levels with mild canal stenosis, but a neurosurgeon had informed him he did not need surgical intervention.  (Tr. 382).  Hosfield noted that Vicodin helped with his pain but made him groggy/drowsy.  *Id.*  His physical examination results were unremarkable.  *Id.*  Dr. Kumar assessed him with: (i) lumbago with sciatica, for which she adjusted his medication and referred him to a chiropractor; (ii) multilevel degenerative disc disease, for which his medication was refilled; and (iii) other issues unrelated to his disability claim.  (Tr. 381).

On July 2, 2018, Hosfield saw Taylor Kann, D.O., as a follow-up from his appointment with Dr. Patel.  (Tr. 384).  Hosfield requested a referral for pain management and re-referral to a chiropractor.  (Tr. 385).  On physical examination, it was noted that he had edema on his left leg, a cast on his right leg (due to an unrelated ankle injury), bruising on his right toe, and a soft mass under the skin of his left anterior chest.  *Id.*  Dr. Kann referred Hosfield to pain management and a chiropractor, a dermatologist, and had his medication adjusted.  (Tr. 384).

On August 13, 2018, Hosfield saw Dr. Patel, who discussed the risks of using Ibuprofen, given his recent medical history, telling him she would not prescribe it and advised him to seek pain management.  (Tr. 387).  Hosfield's physical examination results were, generally, unremarkable.  (Tr. 387-388).

On August 15, 2018, Hosfield was discharged from Portage Path Behavioral Health for lack of treatment; it was noted his progress had been minimal.  (Tr. 430).

On April 2, 2021, Hosfield saw Paul Coleman, M.D., regarding his back.  (Tr. 525). Hosfield reported chronic lower back pain and gastroesophageal reflux.  *Id.*  On physical examination, Dr. Coleman noted Hosfield had lumbar muscle spasms and pain with any range of motion.  (Tr. 527).  Dr. Coleman assessed Hosfield with neuropathy, chronic midline lower back pain with bilateral sciatica, and gastroesophageal reflux disease without esophagitis, and adjusted Hosfield's medication.  (Tr. 526).

On April 5, 2021, Hosfield had x-rays of his spine taken which noted that he had multilevel degenerative disc disease but there was no evidence of an acute bony injury or malalignment.  (Tr. 539).

On July 6, 2021, Hosfield saw Dr. Coleman, regarding his back.  (Tr. 546-545).  Hosfield reported chronic lower back pain, gastroesophageal reflux, and other conditions unrelated to his disability application.  (Tr. 547).  A review of his systems was unremarkable except for back pain.  (Tr. 547-548).  Hosfield's physical examination was unremarkable, except for noted tenderness over several discs in his spine.  (Tr. 549).  Dr. Coleman adjusted his medication. (Tr. 547).

### C.      Relevant Opinion Evidence

### 1.      Function Report – Leslie Hosfield

On January 18, 2021, Hosfield completed a function report.  (Tr. 315-322).  He indicated he lived alone and had pain in his lower back, which, when flared-up, caused a loss of feeling in his legs.  (Tr. 315).  He described his day as eating meals and, if possible, doing minor work on the home he lived in.  (Tr. 316).  He did not care for anyone else.  *Id.*  He indicated that before his back and leg pain, he performed building maintenance, construction, and car repairs.  *Id.*  His pain affected his sleep, as he would feel like ants were on his legs.  *Id.*  He noted it was harder to bend to put his shoes and wash his feet, but otherwise his personal care was unaffected by his pain.  *Id.*  Hosfield indicated he would prepare his own meals but how often and for how long varied.  (Tr. 317).  He also indicated that he did household chores, "in time as I feel confident that I can."  *Id.*  He did not need any encouragement to do the chores.  *Id.*  He went outside as needed and would either use public transit or get rides from friends or family if he needed to travel, as he did not have a car.  (Tr. 318).  He would go grocery shopping in stores about every two weeks for about an hour.  *Id.*  His hobbies included watching TV, which he did every day.  (Tr. 319).  He would spend time with others in person, on the phone, or texting, which varied in how often he did them.  *Id.*  Hosfield indicated his back and leg issue affected his ability to lift, bend, stand, and kneel.  (Tr. 320).  He noted he could kneel when his knees were numb, and he could not lift too much weight, bend with pressure on his back, and stand longer than two hours.  *Id.*  He would walk for about 15 to 20 minutes before needing to stop and indicated he would rest, usually, for 15-20 minutes but sometimes 30 minutes.  *Id.*  He could follow written and spoken instructions well and got along well with authority figures.  *Id.*  He also noted that he handled stress and changes in his routine "ok."  (Tr. 321).

11

### 2. State Agency Consultants – Physical

On March 10, 2021, Gary Hinzman, M.D., reviewed the medical evidence to determine any limitations as to Hosfield's RFC; he found that there was insufficient evidence to make a determination. (Tr. 214-215). On July 30, 2021, Elizabeth Das, M.D., reconsidered the medical evidence and likewise found insufficient evidence to reach a determination. (Tr. 220).

### 3. State Agency Psychiatric Consultants

On March 7, 2021, Karla Delcour, Ph.D., reviewed the medical evidence for any psychological limitations Hosfield may have; she found that there was insufficient evidence to make a determination. (Tr. 215). On July 14, 2021, Aracelis Rivera, Psy.D., reconsidered the medical evidence and likewise found insufficient evidence to make a determination. (Tr. 220-221).

### D. Relevant Testimonial Evidence

Hosfield testified at the administrative hearing. (Tr. 39-60). Hosfield testified that he, generally, lived alone and had not been employed since 2015. (Tr. 40-41). His friends, family, and ex-wife helped provided for his needs. (Tr. 41). He had a driver's license and GED. *Id.* He had previously worked doing maintenance for a building and as a machine operator working with a lathe. (Tr. 42-44). He'd had a car accident in March 2015 that started his health conditions. (Tr. 47-48). Before the accident, he had trouble with the arthritis in his back. (Tr. 48). After the accident, he was treated with injections, muscle relaxers, and opiates. (Tr. 49). He also struggled with numbness in his right leg about half the time, and numbness in his left leg all the time. *Id.* The numbness had gotten progressively worse since the accident; he noted that his legs were initially tingling, which he estimated started about 4 to 3 and a half years ago. (Tr. 50). Hosfield testified that he'd had a "mild case" of tingling and numbness before December 2016,

which he could tolerate.  *Id.*  But at the time of the hearing, he would feel like a needle was being run through his leg.  (Tr. 50-51).  While he had this "mild case" he would struggle to walk on flat surfaces if he could not see his feet because he would not know where his feet were.  (Tr. 52). He did not know how far he would have been able to walk.  (Tr. 52-53).

Hosfield also testified that he had problems with his back that made it difficult to sit for long periods of time.  (Tr. 53).  Back in 2016, he estimated he could sit for a couple of hours.  *Id.* Before his accident, he had been able to lift 250 pounds, but after he was reduced to 75 and then 35 pounds.  (Tr. 53-54).  In addition to medication, he had also seen a chiropractor.  (Tr. 54).  As to Hosfield's mental health, he noted that he loved talking to the counselors at Portage Path.  *Id.* Prior to speaking with the counselors, he was having "self-conflicting-issue attacks" which he indicated were "where you turn around and try to hurt yourself."  (Tr. 55).  He never took any mental health medication.  *Id.*  When he was asleep, he would also have flashbacks and nightmares.  (Tr. 56).  There were certain places he would avoid because of his past trauma, he was cautious about everything, and he would have trouble being motivated to do things, leave his home, or interact with others.  *Id.*  He also had struggled with focusing, concentrating, and paying attention while on opiates.  (Tr. 57).

Hosfield indicated he had needed assistance with household chores for about a year following his accident.  (Tr. 57-58).  He started going to physicians because of his back pain and his legs going numb.  (Tr. 59-60).  They did x-rays and an MRI that indicated the nerves in his lumbar area were going numb.  (Tr. 60).  With the pain and numbness, he could not function like normal.  *Id.*

### III.    Law & Analysis

#### A.    Standard of Review

The court's review of the Commissioner's final decision denying disability benefits is limited to deciding "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion," *Id.* at 406 (internal quotation marks omitted), even if a preponderance of the evidence might support the opposite conclusion. *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020).  However, the ALJ's decision will not be upheld when the ALJ failed to apply proper legal standards and the legal error prejudiced the claimant. *Rabbers v. Comm'r SSA*, 582 F.3d 647, 654 (6th Cir. 2009).  Nor will the court uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotation marks omitted).

#### B.    Step Four: Subjective Symptom Complaints

Hosfield argues that the ALJ erred in evaluating his subjective symptom complaints. ECF Doc. 7 at 11-15.  He asserts that the record evidence regarding the pain and numbness in his back, tingling in his legs, anger issues, and PTSD symptoms were consistent with his complaints, and the ALJ failed to adequately explain his decision to discount Hosfield's complaints.  ECF Doc. 7 at 14-15.  The Commissioner disagrees, noting that Hosfield relies heavily on post-date last insured evidence.  ECF Doc. 10 at 6-7.  Hosfield's reply brief did not address this issue.  *See* ECF Doc. 11.

A claimant's subjective symptom complaints are among the evidence that an ALJ must consider in assessing a claimant's RFC at Step Four of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(e); *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) ("Subjective complaints of pain or other symptoms may support a claim of disability.").  Generally, an ALJ must explain whether she finds the claimant's subjective complaints consistent with objective medical evidence and other evidence in the record.  SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (The ALJ must clearly explain his reasons for discounting subjective complaints).  In conducting this analysis, the ALJ may consider several factors, including claimant's efforts to alleviate his symptoms, whether any treatment was effective, and any other factors concerning the claimant's functional limitations and restrictions.  SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. § 404.1529(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).  The regulations don't require the ALJ to discuss each factor or each piece of evidence, but only to acknowledge the factors and discuss the evidence that supports his decision.  *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints." (quotation omitted)); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("'[A]n ALJ is not required to discuss all the evidence submitted.'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

The ALJ applied the correct legal standards and reached a decision supported by substantial evidence in finding that Hosfield's subjective symptoms complaints were inconsistent

with the medical and other evidence.  42 U.S.C. § 405(g); *Blakely*, 581 F.3d at 405.  Hosfield's

argument consists mainly of conclusory assertions that the ALJ's findings were erroneous

because of the record evidence.  *See* ECF Doc. 7 at 11-16.  Hosfield did, however, make a

passing reference to the ALJ's conclusion that Hosfield's "symptoms, including pain, were not

entirely consistent with the medical evidence," noting his allegations regarding pain in his back

and numbness and tingling in his legs.  ECF Doc. 7 at 13-14.  Hosfield further argued that the

ALJ failed to explain his reason for rejecting Hosfield's complaints.  ECF Doc. 7 at 15.  These

arguments lack merit.

To begin with, Hosfield's argument (and his application) relied almost exclusively on

evidence generated *after* the date last insured to support his contention that the ALJ erred in

evaluating Hosfield's subjective symptom complaints about his limitations during the period

under adjudication.  *See* ECF Doc. 7 at 12-14.  However, "[g]enerally, an ALJ does not consider

evidence of a claimant's disability after the date last insured in determining whether to award

benefits." *Ferguson v. Comm'r of Soc. Sec.*, No. 1:15-CV-2714, 2017 U.S. Dist. LEXIS 19914,

at *8 n.45 (N.D. Ohio Feb. 13, 2017) (citing *Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981)).

Nevertheless, although the ALJ did not neatly lay out his analysis for finding Hosfield's

complaints inconsistent in a single tidy paragraph, his reasoning is clear when the entire decision

is read with common sense.  *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th

Cir. 2020) ("[The court] read[s] the ALJ's decision as a whole and with common sense.").  The

ALJ acknowledged his obligations under SSR 16-3p.  (Tr. 21).  In his summary of the medical

evidence, the ALJ summarized several portions of the medical record in such a manner that

indicated he found them less supportive of Hosfield's claimed limitations.  For example, the ALJ

noted that, although imaging showed that Hosfield had multi-level endplate degenerative

16

changes in his sacroiliac joints, there were no pars or facet joint defects. (Tr. 22). Similarly, the ALJ noted that there was no evidence that Hosfield ever took medication to treat his symptoms during the period under adjudication; and, indeed, was never prescribed medication until *after* his date last insured. Also, the ALJ noted that Hosfield did not discernably attend chiropractic therapy; he had no surgical procedures during the year-plus after his date last insured; and his clinical examinations, generally, only noted mildly adverse or benign findings. *Id.* Similarly, the ALJ noted that the reports of Hosfield's mental status exams, generally, contained only mildly adverse or benign findings. (Tr. 23). After each summary, the ALJ noted that "the evidence would indicate that the symptom limitations relevant to these impairments were not as severe as alleged." *Id.* In light of this summary, the ALJ's discussion of the medical evidence build a logical bridge from the evidence to his conclusion that Hosfield's subjective symptoms complaints were inconsistent with the medical evidence. *See Fleischer*, 774 F. Supp.2d at 877.

Moreover, regardless of the record evidence Hosfield can cite in support of his claims, the ALJ's conclusions were also supported by substantial evidence and, thus, remand is not warranted. *Blakley*, 581 F.3d at 406; *O'Brien*, 819 F. App'x at 416. Such evidence regarding Hosfield's mental and physical health includes: (i) the medical records containing generally consistent notations that Hosfield was cooperative, in a euthymic mood, and otherwise unremarkable mental status examinations (*see* Tr. 567, 570, 573, 575, 577, 579, 585, 588, 593); (ii) treatment notes indicating Hosfield had tenderness or mild pain on palpation in his back but no other significant limitations (*see* Tr. 360, 363, 365, 368, 369, 374, 385, 387-388, 500, 527, 549); (ii) the lack of any chiropractic treatment notes; (iv) Hosfield's generally conservative treatment, being treated mainly by referrals to chiropractors and medication; (v) Hosfield's own admission that his pain had progressively worsened, noting in October 2017 that it had only been

the last few months, months after the date last insured (*see* Tr. 498); and (vi) Hosfield's

testimony that he tolerated the numbness and did not know a limit for how far he could walk

(Tr. 50).  *See Blakely*, 581 F.3d at 406.

Accordingly, the ALJ's decision fell within the Commissioner's "zone of choice," and

remand on this issue is not warranted. *Mullen v. Bowen*, 800 F.3d 535, 545 (6th Cir. 1986)

(recognizing that there is a "zone of choice" within which decisionmakers may reasonably reach

contrary decision and, those decision cannot be second-guessed by the court).

### C.     Step Four: Residual Functional Capacity

Hosfield contends that the ALJ erred in determining he was capable of working at the

medium exertional level by failing to consider the cumulative effect of his symptoms and

erroneously adopted the opinion of the agency consultants who all had determined there was

insufficient evidence to reach a disability determination.  ECF Doc. 7 at 7-11.  The

Commissioner disagrees, noting that the ALJ's agreement with the state agency consultants cited

by Hosfield was as to the Step Three medical listings evaluation, not the Step Four RFC

determination.  ECF Doc. 10 at 3-5.  Hosfield's reply brief contends that the Commissioner's

contentions regarding the ALJ's acceptance of the state agency consultants' findings was an

improper post hoc rationale.  ECF Doc. 11 at 1-2.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's

RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e).  The RFC

is an assessment of a claimant's ability to do work despite his impairments.  *Walton v. Astrue*,

773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p,

1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and

restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

18

SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history,

medical signs, laboratory findings, and statements about how the symptoms affect the claimant.

20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

Under the regulations, medium work is defined as "involve[ing] lifting no more than 50

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20

C.F.R. § 404.1567(c).  SSR 83-10 adds further explanation to the exertional level:

> A full range of medium work requires standing or walking, off and on, for a total of
> approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent
> lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur
> intermittently during the remaining time.  Use of the arms and hands is necessary to grasp,
> hold, and turn objects, as opposed to the finer activities in much sedentary work, which
> require precision use of the fingers as well as use of the hands and arms.  The considerable
> lifting required for the full range of medium work usually requires frequent bending-
> stooping . . . .  Flexibility of the knees as well as the torso is important for this activity. . .

SSR 83-10, 1983 SSR LEXIS 30.

The ALJ applied the correct legal standards and reached a conclusion supported by

substantial evidence in determining that Hosfield could perform work at the medium exertional

level work during the relevant period.  42 U.S.C. § 405(g), *Blakley*, 581 F.3d at 405.  At its core,

Hosfield's challenge invites the court to reweigh the record evidence.  Rather than criticizing any

specific limitation or finding that the ALJ cited in support of his determination that Hosfield

could perform medium work, Hosfield argues that the ALJ "erroneously failed to consider the

cumulative effect of his symptoms on his ability to engaged in substantial failed activity."  ECF

Doc. 7 at 10.  But a review of the ALJ's decision belies that claim.  The ALJ was not required to

consider the vast majority of Hosfield's submitted medical records – because they were

generated after the relevant period.  But the ALJ reviewed them nevertheless.  The ALJ

summarized those arguably irrelevant records,[3] noting multiple instances of objective testing reflective of Hosfield's back pain, Hosfield's complaints of knee pain, and his mental health treatment records.  (Tr. 22-23).  But the ALJ concluded the pain and limitations caused by those conditions were not disabling.

Hosfield also appears to argue that the ALJ erroneously relied on the state agency consultants' opinions, asserting that the ALJ's statement he reached the same conclusions as them was erroneous because all four consultants found insufficient evidence to reach any disability determinations.  ECF Doc. 7 at 10.  This argument is puzzling, and ultimately unavailing.  As the Commissioner points out, Hosfield's citation to the ALJ's statement references the ALJ's discussion of Hosfield's medical impairments.  ECF Doc. 10 at 5.  Regarding the RFC, the ALJ clearly rejected the state agency consultants' opinions that there was insufficient evidence to reach a determination.  (Tr. 24-25).  Thus, to the extent Hosfield intends to use the ALJ's agreement with the state agency consultants on medically determinable impairments (at Step Two) as support for an error in the RFC (at Step Four), his argument fails because the two steps in the sequential evaluation process evaluate different issues and the ALJ's agreement with a state consultant's conclusion at Step Two says nothing about the conclusion to be reached at Step Four, generally speaking.  And, to the extent Hosfield intends to raise is as a separate Step Two argument, it is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at

---

[3] Medical records generated after a period under adjudication in a Social Security disability claim are not irrelevant *if* a medical opinion indicates that the records shed light on a claimant's condition *during* a period under adjudication.  Here, the court has not been alerted to any such opinions by either Hosfield or the Commissioner.  Because Hosfield bore the burden of proof on the issues addressed at Steps One through Four of the sequential evaluation process, this gap in the evidence undermines his disability claim and his assertion that the after-date-last-insured-evidence is relevant.

developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Moreover, the ALJ's determination that Hosfield could perform medium exertional level work was supported by substantial evidence, including: (i) treatment notes indicating his strength in his extremities was normal (Tr. 360, 365, 368, 500); (ii) treatment notes indicating he had minimal limitations in the flexion of his back (Tr. 360, 365, 368, 369, 500); (iii) treatment notes indicating his gait was normal (Tr. 360, 500); and (iv) Hosfield's testimony that he had mild tingling he could tolerate, could sit for a couple hours, had relatively high lifting abilities during the majority of the relevant period, and had no idea how far he could walk (Tr. 50, 52-54).  *See Blakley*, 581 F.3d at 406.  Based on this evidence, the ALJ's decision was supported by substantial evidence and fell within the Commissioner's "zone of choice;" accordingly, it must be affirmed.  *See Mullen*, 800 F.2d at 545.

## IV.    Conclusion

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Hosfield's application for DIB is affirmed.

**IT IS SO ORDERED.**

Dated: August 22, 2023

Thomas M. Parker
United States Magistrate Judge

21